IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LEROY JOHNSON, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.  2:11-CV-493-WKW |
| ) | (WO) |
| TRUMAN CARTER, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  Introduction**

On June 22, 2011, Plaintiff Leroy Johnson, *pro se*, filed this action against Defendants Captain D's, LLC, and Truman Carter in his capacity as "area director" of Captain D's. Johnson alleges that, with respect to his compensation and the termination of his employment at Captain D's, Carter and Captain D's illegally discriminated against him on the basis of race, gender, and age.  Johnson seeks recovery of "unpaid yet earned" retirement and vacation pay, reinstatement to his former employment, and other relief as may be appropriate.

The court has jurisdiction of these claims pursuant to the jurisdictional grants in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 626, and its federal question jurisdiction, 28 U.S.C. §1331.

This action is now pending before the court on the defendants' motion to dismiss or, in the alternative, motion to stay and compel arbitration (Doc. 9).  After careful review of

the motion, the briefs filed in support of and in opposition to the motion, and the supporting and opposing evidentiary materials, the undersigned entered a recommendation that the motion to dismiss should be denied, but the motion to stay and compel arbitration should be granted. (Doc. 14).

Johnson filed a timely objection to the recommendation (Doc. 15) in which he contended that the court "overlooked" his argument that the written Employment Dispute Resolution Plan is an "elect[ive] document." In support of this argument, Johnson relies on the following language in the Employment Dispute Resolution Plan: "I understand that my employment, compensation and terms and conditions of my employment can be altered or terminated, with or without cause, and with or without notice, at any time, at the option of either Captain D's or myself." (Docs. 15, Ex. 1). Johnson contends that this language gives either or both parties the option to amend or terminate the terms and conditions of Johnson's employment (including the arbitration agreement) at any time, with or without notice. (Doc. 13, Ex. 2 p. 2; Doc. 15). The court subsequently withdrew the recommendation entered on September 20, 2011. (Doc. 18).

Upon further consideration of the briefs and evidentiary materials filed by both parties with respect to the motion to compel arbitration, the court concludes that the motion to dismiss should be denied, but the motion to stay and compel arbitration should be granted.

## II. Standard of Review

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.,* is based on the strong

2

federal policy supporting arbitration agreements. In enacting the FAA, Congress was seeking "to reverse the longstanding judicial hostility to arbitration agreements ... and to place [these] agreements on the same footing as other contracts." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). Pursuant to the FAA, "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

"Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). "In determining whether the parties agreed to arbitrate a particular dispute, courts consider: (1) whether there is a valid agreement to arbitrate; and (2) whether the dispute in question falls within the scope of that agreement." *Scurtu v. Int'l Student Exch.*, 523 F. Supp. 2d 1313, 1318 (S.D. Ala. 2007) (Steele, D.J.) (citing *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996); *Hudson v. Outlet Rental Car Sales, Inc.*, 876 So. 2d 455, 457 (Ala. 2003)). Generally, "[w]hen deciding whether the parties agreed to arbitrate a certain matter" the court is to "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). If the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," the court shall direct the parties "to proceed to arbitration in accordance with the terms of the

agreement." 9 U.S.C. § 4.

### III.  Facts

Unless otherwise noted, the following facts are undisputed.  In the 1990's, Johnson obtained employment at a Shoney's restaurant. Thereafter, Captain D's acquired the Shoney's restaurant where Johnson worked and began operating it as a Captain D's restaurant.  Johnson continued to work at the restaurant and, beginning July 2, 2001, Johnson held the position of general manager of the restaurant.  As general manager, Johnson was responsible for the entire operation of the restaurant, including the management and supervision of all the employees who worked at the restaurant.

Effective December 1, 2003, Captain D's implemented an "Employee Dispute Resolution Plan," which purported to be applicable to all Captain D's employees.  Captain D's outlined its new dispute resolution plan in a document in which it explained to employees that it was abandoning "The Old 'Lose-Lose' Approach" to employment dispute resolution, *i.e.*, resolution in federal and state courts, in favor of "The New 'Win-Win' Approach," which consisted of an internal complaint procedure, internal mediation of disputes and, failing that, submission of disputes to binding arbitration.  (Doc. 9-2, p. 8).

On December 10, 2003, Johnson signed a one-page document titled "Captain D's Employment Dispute Resolution Plan," which stated, in full:

> **CAPTAIN D'S EMPLOYMENT DISPUTE RESOLUTION PLAN**
>
> I recognize that differences possibly may arise between Captain D's, LLC and me during my application or employment with Captain D's.  I recognize that

4

it is in the interest of both Captain D's and me that disputes be resolved in a manner that is fair, private, expeditious, economical, final, and less burdensome or adversarial than court litigation. Captain D's has an effective Internal Complaint Procedure, and I will try to take advantage of it where possible. I understand, however, that not all issues can be resolved using the internal complaint procedure.

Except as set forth below, both Captain D's and I agree to settle any and all previously unasserted claims, disputes, or controversies arising out of or relating to my application for employment, employment, and/or cessation of employment with Captain D's exclusively by final and binding arbitration before a neutral Arbitrator. By way of example only, such claims include claims under federal, state, and local statutory or common law, such as the Age Discrimination in Employment Act, Title VII of the civil Rights Act of 1964, as amended, including the amendments of the Civil Rights Act of 1991, the Americans with Disabilities Act, the Family Medical Leave Act, the law of contract and law of tort.

I understand that if I do file a lawsuit regarding a dispute arising out of or relating to my application for employment, employment, or cessation of employment, Captain D's may use this Agreement in support of its request to the court to dismiss the lawsuit and require me to use arbitration.

I understand that I still may exercise my rights under the National Labor Relations Act and file charges with the National Labor Relations Board. I further understand that I still may file administrative changes with the Equal Employment Opportunity Commissioner or similar federal, state, or local agency, but that upon receipt of a right-to-sue letter or similar administrative determination, I shall arbitrate any claim that I may have against Captain D's.

I understand that I must file a claim under the Captain D's Employment Dispute Resolution Plan within the federal or state statute of limitations period most applicable to your [sic] claim. I further agree that if I commence an arbitration, it will be conducted in accordance with the "Captain D's Employment Dispute Resolution Plan."

I understand that I neither this Agreement nor the Dispute Resolution Rules and Procedures form a contract of employment between Captain D's and me. I further understand that my signature to this Agreement in no way guarantees that Captain D's will offer me employment. If Captain D's does offer me

5

> employment and I become employed at Captain D's, this Agreement in no way alters the "at-will" status of my employment. I understand that my employment, compensation and terms and conditions of my employment can be altered or terminated, with or without cause, and with or without notice, at any time, at the option of either Captain D's or myself. I understand that no General Manager, other store manager, or representative of Captain D's, other than an officer of Captain D's at the level of Vice-President or above, has any authority to enter into any agreement for employment for any specific duration, to make any agreement contrary to the foregoing or to alter the Captain D's Employment Dispute Resolution Plan.

(Doc. 9-2, p. 38.)

Johnson continued his employment as general manager of the Captain D's restaurant until January 27, 2010, when his employment was terminated by Captain D's. Thereafter, Johnson filed a complaint against Captain D's with the American Arbitration Association ("AAA"). On May 12, 2010, the AAA stayed arbitration to permit Johnson to file an EEOC charge against Captain D's with respect to his alleged grievances. (Doc. 9-2, p. 3 ¶ 8; Doc. 9-1). Subsequently, Johnson filed a charge against Captain D's with the EEOC, alleging that Captain D's illegally discriminated against him with regard to pay and the termination of his employment. On May 25, 2011, the EEOC mailed Johnson a notification that it was closing its file on his charge against Captain D's because the EEOC was unable to determine that a civil rights violation had occurred. (Doc. 1-1).

On June 22, 2011, Johnson filed a complaint *pro se* in this court against Captain D's and against Carter in his capacity as "area director" for Captain D's. Johnson alleges that Captain D's and Carter paid Johnson "disparate wages," terminated Johnson's employment, and improperly withheld vacation and retirement pay upon termination, and that they did

6

these things illegally on the basis of Johnson's race, gender, and age.

## IV.  Discussion

### A.  Existence of the Arbitration Agreement

"The Federal Arbitration Act ... only applies if the parties agreed 'to arbitrate under a written agreement for arbitration.'" *Multi-Financial Securities Corp. v. King*, 386 F. 3d 1364, 1367 (11th Cir. 2004) (quoting 9 U.S.C. §§ 2, 4); *see also AT&T Techs.*, 475 U.S. at 648–49 ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (Citations and quotation marks omitted .)) "The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration." *Sides v. Macon County Greyhound Park, Inc.*, Slip Op., 2011 WL 2728926 at *3 (M.D. Ala. July 13, 2011) (Fuller, D.J.) ; *see also Community State Bank v. Strong*, 485 F.3d 597, 619 (11th Cir. 2007), *vacated on other grounds*, 508 F.3d 576 (11th Cir. 2007), *order vacating the order vacating the original panel decision*, 565 F.3d (11th Cir. 2009) ("'A party who attempts to compel arbitration must show that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope.'" (quoting *InterGen N.V. v. Grina*, 344 F.3d 134, 142 (1st Cir. 2003)); *Univ. of S. Ala. Found. v. Walley* 2001 WL 237309 at * 3 (M.D. Ala. 2001) (De Ment, J.) (noting that the party moving for arbitration "has the burden of proving both: (1) the existence of a written arbitration contract; and (2) that the contract affects interstate commerce, as intended by

7

Congress in enacting the FAA. The burden then shifts to [the nonmoving party] to show that the agreement either: (1) is not valid; or (2) does not apply to the dispute in question. See *Bear Stearns Sec. v. Jones*, [789 So. 2d 161, 164 (Ala. 2000); *Transouth Fin. Corp. v. Bell*, 739 So.2d 1110, 1114 (Ala.1999)"); *Blue Cross Blue Shield of Alabama v. Rigas*, 923 So. 2d 1077, 1086 (Ala. 2005) (holding that, once the party seeking to enforce the arbitration agreement meets the burden of showing the existence of a written arbitration agreement, the burden shifts to other side "to present evidence indicating that the arbitration provision is not valid or that it does not apply to the dispute in question").

Johnson argues that Captain D's, as the party moving to enforce the arbitration agreement, has failed to demonstrate that an applicable arbitration agreement exists. Specifically, Johnson points out that, in support of its motion to compel arbitration, Captain D's submitted an unsigned copy of a document outlining Captain D's Employee Dispute Resolution Plan that was last updated in February 2004. Johnson argues that this 2004 document postdates the "Captain D's Employment Dispute Resolution Plan" that he signed in 2003, and therefore cannot be binding on him. Johnson also denies knowing about Captain D's Employee Dispute Resolution Plan.

Assuming, for the sake of the argument, that the court must ignore the unsigned February 2004 document that is contained in the record (as Johnson insists), the court is still left with the 2003 document titled "Captain D's Employment Dispute Resolution Plan," a written agreement that *was* signed by Johnson and that provides for "final and binding

8

arbitration before a neutral Arbitrator." (Doc. 9, Exhibit 2-B.)  Therefore, the court has no option but to conclude that Johnson agreed to the written arbitration contract. *See Kaplan*, 514 U.S. at 944 ("When deciding whether the parties agreed to arbitrate a certain matter" the court is to "apply ordinary state-law principles that govern the formation of contracts."); *Quality Truck & Auto Sales, Inc. v. Yassine*, 730 So. 2d 1164, 1169 (Ala. 1999) ("'[A] signature ... may serve as a manifestation of an intent to make a contract.'" (quoting 17A Am. Jur. 2d Contracts § 186 (1991)).

Johnson also suggests that the fact that Captain D's signature is missing from the 2003 document that he signed somehow prevents the parties from having an enforceable written arbitration agreement.  This argument fails as a matter of law.  *Caley v. Gulfstream Aerospace Corp.*, 428 F. 3d 1359, 1368 (11th Cir. 2005) ("The plaintiffs first argue that the [arbitration agreement] is not an 'agreement in writing' for purposes of FAA enforcement because it is not signed by both parties. We reject this argument because while the FAA requires that the arbitration agreement be in writing, it does not require that it be signed by the parties.").

Finally, Johnson points out that the Employment Dispute Resolution Plan states: "I understand that my employment, compensation and terms and conditions of my employment can be altered or terminated, with or without cause, and with or without notice, at any time, at the option of either Captain D's or myself."  Doc. 15-1. Johnson contends that this language gives either or both parties the option to amend or terminate <u>any</u> of the terms and

9

conditions of Johnson's employment – including the arbitration agreement – at any time, with or without notice (Doc. 13-2 p. 2; Doc. 15). Johnson's interpretation of the Employment Dispute Resolution Plan as "an elect[ive] document" ( Doc. 15) goes to the enforceability of the overall employment agreement, including each and every one of its terms and conditions – not just the arbitration provision. Therefore, whether Johnson may withdraw from the Employment Dispute Resolution Agreement, and whether his purported withdrawal is effective at this stage of the litigation, are issues for the arbitrator, not the court, to decide. *See Buckeye Check Cashing, Inc. v. Cardegna* , 546 U.S. 440, 449 (2006) ("[R]egardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."); *Prima Paint Corp. v. Flood & Conklin Mfg.*, Co., 388 U.S. 395, 404 (1967) ("[I]n passing upon a[n] ... application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate," not issues related to the validity of the contract as a whole).

Thus, the court concludes that a written arbitration agreement exists.

### B. Transaction Involving Commerce

As noted above, the FAA applies to the enforcement of "[a] written provision in any . . . contract evidencing a transaction involving commerce." 9 U.S.C. § 2. The parties do not dispute that the arbitration agreement satisfies the FAA's requirement of a contract "involving commerce." *Id*. "Commerce," for purposes of the FAA, generally includes

employment contracts, *Circuit City v. Adams*, 532 U.S. 105, 113 (2001) . Further, the business activity of restaurants has been held to constitute interstate commerce. *See*, *e.g.*, *Katzenbach v. McClung*, 379 U.S. 294 (1964) (holding that an Alabama barbecue restaurant participated in interstate commerce). The United States Supreme Court has expressly held that the FAA "generally applies to contracts of employment except those involving 'transportation workers.'" *Caley*, 428 F.3d at 1367. In light of controlling precedent and the nature of the relevant contract in this case (*i.e.*, a contract for employment at a restaurant), the court concludes that the arbitration agreement is part of a contract that involves interstate commerce and therefore is enforceable under the FAA.

### C. Scope of the Arbitration Agreement

In determining whether a dispute must be submitted to arbitration, the court must consider not only whether the parties have a written agreement to arbitrate, but also whether the parties' dispute falls within the scope of that agreement. *Community State Bank*, 485 F.3d at 619; *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute."); *Rent-a Center West, Inc. v. Jackson*, 130 S. Ct. 2772, 2782 (2010) (noting that, unless otherwise specified in the arbitration agreement, the trial court is to decide "questions regarding the existence of a legally binding and valid arbitration agreement, as well as questions regarding the scope of a concededly binding arbitration agreement"). In making that determination, the court is

11

mindful that, where a contract contains an arbitration clause, "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *AT&T Tech.*, 475 U.S. at 650 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).

However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers*, 363 U.S. at 582. Therefore, "[i]n determining which claims are arbitrable, the court looks to the intent of the parties, and in so doing, gives full effect to all provisions in the contract." *Betkowski v. Kelley Foods of Alabama, Inc.*, 697 F. Supp. 2d 1296, 1298 (M.D. Ala. 2010)(citing *Redmon v. Soc'y & Corp. of Lloyds*, 434 F. Supp. 2d 1211, 1218 (M.D. Ala. 2006)). "Generally, a court should enforce an arbitration agreement according to its terms." *Davis v. Southern Energy Homes, Inc.*, 305 F.3d 1268, 1273 (11th Cir. 2002).

The written 2003 arbitration agreement that Johnson signed plainly states:

> Captain D's and [Johnson] agree to settle *any and all previously unasserted claims, disputes, or controversies arising out of or relating to [Johnson's] ... employment and/or cessation of employment* with Captain D's exclusively by final and binding arbitration before a neutral Arbitrator. By way of example only, such claims include claims under federal, state, and local statutory or common law, such as the *Age Discrimination in Employment Act*, *Title VII of the Civil Rights Act of 1964, as amended*, *including the amendments of the Civil Rights Act of 1991* ... the law of contract and law of tort.

(Doc. 9, Exhibit 2-B) (emphasis added).

12

In his complaint, Johnson alleges that Captain D's discriminated against him with respect to race, gender, and age when it determined his wages, terminated his employment, and refused to pay his earned vacation and retirement. These claims "aris[e] out of" and "relat[e] to [Johnson's] employment and/or the cessation of [his] employment," and thus are clearly within the scope of the arbitration agreement. *Id*. *Cf.*, *e.g.*, *Lambert v. Austin Ind.* 544 F. 3d 1192 (11th Cir. 2008) (holding that claims of age and race discrimination in employment termination fell within the scope of an agreement that provided for arbitration of "disputes arising from or related to employment"); *Betkowski*, 697 F. Supp. 2d 1296 (compelling arbitration of plaintiff's ADEA cause of action where arbitration agreement covered "all disputes" involving plaintiff's employment or termination of employment). Moreover, Johnson's claims fall under the Age Discrimination in Employment Act and Title VII of the Civil Rights Act of 1964, as amended, both of which are specifically enumerated in the arbitration agreement's nonexclusive list of the types of disputes that it encompasses. *See Davis* 305 F.3d at 1273 ("[A] court should enforce an arbitration agreement according to its terms.").

For these reasons, the court concludes that Johnson's claims are within the scope of the written arbitration agreement.

**D. Waiver**

Johnson argues that Captain D's waived its right to enforce the arbitration agreement when it engaged in proceedings before the EEOC without asserting its right to pursue

13

arbitration. *See Morewitz v. W. of England Ship Owners Mut. Prot. & Indem. Ass'n*, 62 F.3d 1356, 1366 (11th Cir. 1995) ( "Waiver occurs when a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate and this participation results in prejudice to the opposing party. *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1158 (5th Cir.1986). Prejudice has been found in situations where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate. *E.C. Ernst, Inc. v. Manhattan Constr. Co.*, 559 F.2d 268, 269 (5th Cir. 1977)."); *see also Companion Life Ins. Co. v. Whitesell Mfg., Inc.*, 670 So. 2d 897, 899 (Ala. 1995) ("It is well settled under Alabama law that a party may waive its right to arbitrate a dispute if it substantially invokes the litigation process and thereby substantially prejudices the party opposing arbitration. Whether a party's participation in an action amounts to an enforceable waiver of its right to arbitrate depends on whether the participation bespeaks an intention to abandon the right in favor of the judicial process and, if so, whether the opposing party would be prejudiced by a subsequent order requiring it to submit to arbitration.").

> The court notes that the arbitration agreement that Johnson signed states:
>
> I ... understand that I still may file administrative changes with the Equal Employment Opportunity Commissioner or similar federal, state, or local agency, but that upon receipt of a right-to-sue letter or similar administrative determination, I shall arbitrate any claim that I may have against Captain D's.[1]

(Doc. 9, Exhibit 2-B.)

---

[1] Johnson received a right-to-sue letter from the EEOC on May 25, 2011. (Doc. 1-1).

Moreover, Captain D's has not participated in litigation in a judicial forum in a manner inconsistent with an intent to arbitrate. In fact, the court notes that the parties initially pursued a resolution of this dispute through arbitration, and that arbitration was stayed to allow Johnson to bring his claims before the EEOC.

Because the arbitration agreement expressly allows for the parties to engage in proceedings before the EEOC, and because Captain D's has not participated in litigation to a point inconsistent with an intent to arbitrate, Johnson's contention that Captain D's waived the right to compel arbitration by participating in the EEOC proceedings is contrary to both the plain language of the arbitration agreement and controlling law. *See AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1756 (2011) ("[C]ourts must place arbitration agreements on equal footing with other contracts, and enforce them according to their terms. (Citations omitted.)); *see also Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000) ("Brown also argues that [his employer] waived its right to arbitrate ... by failing to raise the arbitration issue with the EEOC. This assertion is also without merit. ... The demand for arbitration was made promptly after the lawsuit was filed. Brown did not incur the delay or expense associated with litigation that might otherwise demonstrate prejudice. ... As there was no delay or action by [the employer] inconsistent with an intent to arbitrate, no waiver occurred.").

Therefore, the court concludes that Captain D's did not waive its right to enforce the arbitration agreement.

**E. Arbitrability of Claims Against Truman Carter**

Johnson has joined Truman Carter as a defendant in his capacity as area director of Captain D's. Carter argues that any claims against him, as Captain D's agent, are subject to the arbitration agreement.[2]

State law principles of contract govern whether a nonsignatory to an arbitration agreement may enforce that agreement. *Lawson v. Life of the South Ins. Co.*, 648 F.3d 1166, 1170-71 (11th Cir. 2011). Under Alabama law, "an agent who has incurred liability for his principal by acting in the line and scope of his employment also 'stands in the shoes' of his principal with respect to the principal's rights in the transaction," and, therefore, may enforce an arbitration agreement between the plaintiff and the principal. *Stevens v. Phillips*, 852 So. 2d 123, 130-31 (Ala. 2002). Johnson's claims against Carter are identical to his claims against Captain D's, and it is apparent that Johnson alleges that Carter is the employee of Captain D's who, on Captain D's behalf, committed the acts that form the basis of the complaint.

Accordingly, the court concludes that Johnson's claims against Carter are subject to the written arbitration agreement. *See Stephens,* 852 So. 2d at 130-11 (holding that, where the plaintiff's claims against the agent arose out of representations made by the agent in the course of his employment, the agent stood in the shoes of the employer and could invoke the

---

[2] Truman Carter did not file a separate motion to dismiss or other response to the complaint. However, from footnote 1 of the motion to dismiss or stay and compel arbitration (Doc. 9, p.1 n.1), it is clear that Truman Carter joins that motion.

arbitration agreement between the plaintiff and employer). *Cf. Southern Mills, Inc. v. Nunes*, No. 1:10-CV-03340-RWS, 2011 WL 2358652, at *4 (N.D. Ga. 2011) ("Precedent holds that agents of a signatory to an arbitration agreement can themselves invoke the signatory's agreement. *See*, *e.g.*, *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993) (dismissing an attempt to distinguish 'controlling persons' from the widespread, consistent holding among circuits 'that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement'); *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281–82 (6th Cir. 1990) (affirming a district court's grant of a motion to compel arbitration by an agent). "If it were otherwise, it would be too easy to circumvent the agreements by naming individuals as defendants instead of the entity [ ] themselves." *Roby*, 996 F.3d at 1360.

## V. Conclusion

Because the court concludes that Johnson's claims against Captain D's and Truman Carter are subject to a written arbitration agreement, the court concludes that the defendants' motion to compel arbitration pursuant to the FAA should be granted. Accordingly, it is the Recommendation of the Magistrate Judge that the defendants' motion to stay and compel arbitration (Doc. 9) be **GRANTED**, and the motion to dismiss be **DENIED.**[3] It is further

**ORDERED** that the parties shall file any objections to this Recommendation on or before **February 27, 2012**. Any objections filed must specifically identify the findings in

---

[3]Because the court concludes that the motion to stay and compel arbitration is due to be granted, the motion to dismiss is due to be denied.

the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 13th day of February, 2012.

/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE